

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

ENTERED
03/09/2016

| | | |
|---|---|---|
| IN RE: | § | |
| **SADLER CLINIC, PLLC,** *et al* | § | **CASE NO: 12-34546** |
| Debtor(s) | § | |
| | § | **CHAPTER  7** |
| | § | |
| **ALLISON D. BYMAN, CHAPTER 7** | § | |
| **TRUSTEE** | § | |
| Plaintiff(s) | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 14-3229** |
| | § | |
| **LABORATORY CORPORATION OF** | § | |
| **AMERICA HOLDINGS** | § | |
| Defendant(s) | § | |

## MEMORANDUM OPINION

Allison D. Byman, chapter 7 trustee, has moved for partial summary judgment on her 11 U.S.C. § 547 claims.  Defendant Laboratory Corporation of America Holdings ("LabCorp") has moved to strike Byman's solvency experts and has moved for partial summary judgment on the § 547 claims.  LabCorp's motion to strike is denied.  A genuine issue of material fact exists as to insolvency.  Byman's motion for partial summary judgment is granted with respect to 11 U.S.C. §§ 547(b)(1), (2), (4), and (5).  All other summary relief is denied.  The Court also reserves for trial the affirmative defenses LabCorp has raised pursuant to 11 U.S.C. §§ 547(c)(1) and (2).

### Background Information

On June 15, 2012, Sadler and Montgomery County Management Company, LLC ("MCMC") filed voluntary chapter 11 petitions for relief.  (Case No. 12-34546; ECF No. 1).  Sadler operated a multi-specialty physician clinic known as Sadler Clinic which at its height operated 13 locations and employed a staff of more than 600 healthcare professionals.  *Byman v. Angelica Textile Servs., Inc. (In re Sadler Clinic PLLC)*, 2015 WL 1830531 (Bankr. S.D. Tex.

Apr. 17, 2015).  In the months prior to the bankruptcy filings, Debtors made a series of transfers to LabCorp totaling $360,000.00.[1]  (ECF No. 1 at 1).  There is no dispute that these transfers were made within 90-days of the bankruptcy petitions to LabCorp on account of an antecedent debt owed by the Debtors before the transfers were made.

On August 2, 2012, these cases were converted to cases under chapter 7 of the Bankruptcy Code.  (Case No. 12-34546; ECF No. 181).  Byman was appointed chapter 7 trustee. Byman commenced this adversary proceeding on June 3, 2014, alleging that transfers of $360,000.00 were avoidable pursuant to 11 U.S.C. §§ 547, 548, and 550.  As discovery proceeded, Byman retained solvency experts and served a copy of the expert report on LabCorp pursuant to Fed. R. Civ. P. 26(a)(2).  On July 10, 2015, LabCorp filed a motion to strike Byman's solvency experts.  (ECF No. 25).  Both Byman and LabCorp filed motions for summary judgment on July 10, 2015, based solely on the issue of insolvency.  (ECF Nos. 26 and 27).

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron,* 436

---

[1] The first transfer was an electronic transfer of $45,000.00 made on March 19, 2012.  (ECF No. 27 at 6).  The second transfer was an electronic transfer of $45,000.00 made on March 26, 2012.  *Id.* at 7.  The third transfer was an electronic transfer of $45,000.00 made on April 2, 2012.  *Id.* at 8.  The fourth transfer was an electronic transfer of $45,000.00 made on April 9, 2012.  *Id.* at 9.  The fifth transfer was an electronic transfer of $45,000.00 made on April 16, 2012.  *Id.* at 10.  The sixth transfer was an electronic transfer of $45,000.00 made on April 23, 2012.  *Id.* at 11.  The seventh transfer was an electronic transfer of $45,000.00 made on April 30, 2012.  *Id.* at 12.  The complaint also references a $133.60 transfer made on April 18, 2012, but the trustee has not moved for summary judgment on this transfer.

F.3d 551, 557 (5th Cir. 2006).   A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Royal v. CCC & R Tres Arboles, L.L.C.,* 736 F.3d 396, 400 (5th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A court views the facts and evidence in the light most favorable to the non-moving party at all times.   *City & Cnty. of S. F., Cal. v. Sheehan*, 135 S.Ct, 1765, 1769 (2015).   Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence.   *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003).   A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[2]  Fed. R. Civ. P. 56(c)(1).   The Court need consider only the cited materials, but it may consider other materials in the record.  Fed. R. Civ. P. 56(c)(3).   The Court should not weigh the evidence.   A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).   However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.  Fed. R. Civ. P. 56(c)(2).   Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues.   *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 896 (5th Cir. 2013).

"The moving party bears the burden of establishing that there are no genuine issues of material fact."  *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship,* 520 F.3d 409, 412

---

[2] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for the purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order.  Fed. R. Civ. P. 56(e).

(5th Cir. 2008).  The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 326 (1986).  Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact.  Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 322-24.  The non-moving party must cite to specific evidence demonstrating a genuine dispute.  Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324.  The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004).  Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.  If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim.  *Celotex*, 477 U.S. at 325.  Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case.  *Id.* at 324.  The motion should be granted only if the nonmovant cannot produce evidence to support an essential element of its claim.  *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

## Analysis

*LabCorp's Motion to Strike Byman's Solvency Experts Is Denied*

As a preliminary matter, the Court will address LabCorp's motion to strike Byman's solvency experts.  LabCorp argues that Byman's solvency experts must be stricken because they applied a liquidation value instead of a going concern value in their insolvency opinion.

LabCorp's challenge is made under the Supreme Court's analytical framework for determining whether expert testimony is admissible as set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Under *Daubert*, Rule 702 of the Federal Rules of Evidence charges trial courts to act as "gatekeepers," making a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."  *Id.* at 593.

*Daubert* offers a non-exhaustive list of factors to gauge the reliability of expert testimony.  *Pipitone Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002).  These factors include whether the expert's theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error standards controlling its operation; and (4) is generally accepted in the relevant scientific community.  *Id.*  A *Daubert* analysis is a "flexible" one and the trial court's responsibility is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Id.* (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

Notably, LabCorp fails to cite a single *Daubert* factor in support of its motion to strike.  Instead, it simply argues that Byman's experts are unreliable because they used an improper liquidation valuation to reach their insolvency opinion.  Under § 547 of the Bankruptcy Code, pre-bankruptcy preferential transfers of debtor's property or payments made by the debtor while insolvent may be recovered.  11 U.S.C. § 547.  The debtor is presumed by law to be insolvent during ninety days prior to the bankruptcy filing.  *Id.* § 547(f).  This presumption may be rebutted by preference defendants, and if rebutted, the plaintiff bears the burden of proof of establishing the debtor's insolvency at the time of the transfers.  *Id.* § 547(g).

Insolvency is a defined term in the Bankruptcy Code.  It is defined as a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a *fair valuation*. . . ."  *Id.* § 101(32)(A) (emphasis added).  In other words, the Bankruptcy Code uses a balance sheet test for the purposes of establishing insolvency.  *Schwinn Plan Comm. v. AFS Cycle & Co., Ltd. (In re Schwinn Bicycle Co.)*, 192 B.R. 477, 486 (Bankr. N.D. Ill. 1996).  Fair valuation is generally defined as the going concern or fair market price, "[u]nless a business is on its deathbed."  *Id.* (citing *Utility Stationery Stores, Inc. v. Southworth Company (In re Utility Stationery Stores, Inc.),* 12 B.R. 170, 176 (Bankr. N.D. Ill.1981).  When a business is in a precarious condition or on its financial deathbed, a liquidation value should be used to value its assets.  *Schwinn*, 192 B.R. at 486.  LabCorp's experts have utilized going concern value to determine that the Debtors were not insolvent during the preference period, whereas Byman's experts applied a liquidation value and found the Debtors insolvent.

In other words, utilizing either a liquidation value or going concern value can be an appropriate methodology to value a debtor's assets, depending on its financial condition.  *Daubert* challenges trial courts to make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning can be applied *to the facts in issue*."  509 U.S. at 592-93 (emphasis added).  But LabCorp is not challenging the experts' scientific reasoning, rather, it is using *Daubert* to challenge whether the facts of the case could support a liquidation valuation.  This is not a proper *Daubert* challenge.  Expert reports aid the finder of fact in resolving disputes.  *See Daubert*, 509 U.S. at 591.  They should not then be excluded *because* of these factual disputes.  Accordingly, the motion to strike Byman's solvency experts is denied.

*The Competing Summary Judgment as to Insolvency Are Denied*

Both parties have moved for summary judgment over the § 547 claims.  The six elements of a preference action are: (1) a transfer of an interest of the debtor in property; (2) to or for the benefit of a creditor; (3) for or on account of an antecedent debt owed by the debtor before such a transfer was made; (4) made while the debtor was insolvent; (5) made on or within 90 days before the date of the filing of the petition; and (6) that enables such creditor to receive more than such creditor would have received if the debtor filed under chapter 7 or the transfer had not been made.  *Cage v. Wyo-Ben, Inc. (In re Ramba, Inc.)*, 437 F.3d 457, 459 (5th Cir. 2006). There is no dispute that Byman has met all elements save for insolvency.

As discussed above, a rebuttable presumption of insolvency exists for the 90 days preceding the bankruptcy filing.  A party seeking to rebut the presumption must introduce some evidence to show that the debtor was solvent at the time of the transfer.  *Brothers Gourmet Coffees, Inc. v. Armenai Coffee Corp. (In re Brothers Gourmet Coffees)*, 271 B.R. 456, 458 (Bankr. D. Del. 2002).  The effect of a presumption of insolvency raised by § 547(f) is defined by Fed. R. Evid. 301.[3]  *Chaitman v. Paisano Auto. Liquids, Inc. (In re Almarc Mfg., Inc.)*, 60 B.R. 584, 585 (Bankr. N.D. Ill. 1986).   In other words, the preference defendant must come forward with evidence of the debtor's solvency to rebut or meet the presumption, but the burden of proof remains with the trustee.  *Id.* at 586.  Summary judgment in favor of the trustee is appropriate when the party seeking to rebut fails or when there is no genuine issue of material fact concerning insolvency.  *Id.*  (quoting *Gasmark Ltd. Liquidating Trust v. Louis Dreyfus Natural Gas Corp.* (5th Cir. 1998)).

---

[3] Rule 301 provides that: "In a civil case, unless a federal statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption. But this rule does not shift the burden of persuasion, which remains on the party who had it originally."

To rebut the presumption, LabCorp has provided an affidavit and expert report of Todd Sorensen, a managing director of the independent Value Management Group, LLC, who concludes that based on a going concern value  the Debtors were solvent during all relevant transfers.  In explaining why he chose a going concern valuation, Sorensen noted that Sadler had sustained significant losses in 2010 and 2011 due to the departure of a large number of physicians.  (ECF No. 26-3 at 6).  He then noted that in an effort to replace this lost revenue, MCMC sold all of its furniture, fixtures, and equipment to the Hospital Corporation of America ("HCA") in exchange for $21.3 million.  *Id.*  In addition, the Debtors and HCA entered into an affiliation agreement wherein HCA pledged approximately $9.0 million in additional capital in exchange for the Debtors agreement to pay HCA 3.5% of pre-compensations earnings over the next 40 years.  *Id.*  HCA funded $3.5 million at close.

Sorensen admitted that during the time period in question, Sadler was operating at a substantial loss, but noted that MCMC produced positive operating income at this time, sometimes even making up for Sadler's losses.  He also argued that the 40-year structure of the HCA affiliation agreement indicated that management of HCA and the Debtors believed Sadler/MCMC would continue to operate as a going concern for years to come.  *Id.* at 8.  Finally, Sorensen opined that Sadler could have significantly reduced losses by reducing the amount of compensation paid to owner physicians.  *Id.*

Byman challenges Sorensen's affidavit on the basis that "an expert affidavit must include materials on which the expert based his opinion, as well as an indication of the reasoning process underlying the opinion."  *Boyd v. State Farm Ins. Co.*, 158 F.3d 326, 331 (5th Cir. 1998).  However, Sorensen's expert report containing in detail his reasoning process as well as a list of his sources was attached to the affidavit.  Byman argues that Sorensen is unreliable for various

reasons, i.e., (1) that he failed to exclude certain contingent liabilities, (2) that he should not have considered the book value of assets contained in the Debtors' schedules as fair market value, or (3) that he had no bankruptcy valuation experience; but this is not to say that Sorensen failed to include the materials upon which he based his opinion and indications of reasoning process. Regardless of these alleged flaws in Sorensen's report, LabCorp has still adduced evidence sufficient to raise a genuine issue of material fact as to whether the Debtors were insolvent during the preference period.

The existence of a genuine issue of material fact becomes even more apparent when examining the deposition of Sorensen which challenges many of the assumptions he made during his solvency analysis.  For example, in his solvency analysis for February 29, 2012, Sorensen credited Sadler with a $5,514,912.00 receivable from the HCA transaction, which accounted for almost all of Sadler's assets over liabilities of $5,577,514.00.  (ECF No. 26-3 at 27).  Sorensen admitted that HCA never actually funded this amount, but defended its inclusion by stating that if Sadler had continued in operation it would have received the funding from HCA in the future. (ECF No. 33-1 at 43).

Furthermore, Sorensen was asked why a going concern valuation was appropriate given that (1) Sadler and MCMC had a lengthy history of losses, (2) had sold essentially all their assets to HCA, (3) had provided HCA a lien on all these assets,  and (4) shortly after the affiliation agreement, HCA refused to fund the remaining $5.5 million.  *Id.* at 47.  Sorensen only responded that the typical assumption in a physician practice valuation is that "it can be turned around" and that physician practices often lose a great deal of money and continue to operate.  *Id.*  When challenged on how precisely the Debtors could turn it around, Sorensen agreed that the only

option would likely have been for the physicians forego all payment until the ship could be righted.  (ECF No. 33-2 at 4).

In other words, Byman has presented evidence (through Sorenson's admissions) that, during the relevant time period, the Debtors were on their "financial deathbed."  Faced with two contradictory pictures of the Debtors' financial health, the Court cannot determine whether liquidation or going concern valuation is appropriate.  The situation before the Court is remarkably similar to that presented in *Brothers Gourmet Coffee*.  In that case, the court found a material factual dispute with regards to insolvency where it was presented with an expert report applying a going concern value but documentary evidence contradicting this assumption.  *In re Brothers Gourmet Coffee*, 271 B.R. at 459.  It found that:

> In the case at bench, the evidence in support of and in opposition to the motion for summary judgment is so varied that material facts are in dispute as to whether bankruptcy was imminent on the dates of the transfers.  With the evidence presented in these proceedings, we cannot determine whether liquidation or going concern valuation method will apply. . . .  Armenia's expert used a "going concern" method for valuation which led him to conclude that Debtor was not insolvent in the preference period.  Debtor, however, used a liquidation method of valuation which led it to conclude that it was insolvent.  In the face of two differing methods used for the business evaluations, which suggest opposite conclusions on the issue of insolvency, *summary judgment cannot be granted*. The court is asked to compare apples to oranges.

*Id.* at 460.

The Court will hold a trial on the issue of insolvency.  The elements of 11 U.S.C. §§ 547(b)(1), (2), (4), and (5) have been established in the summary judgment record.  All other summary relief is denied.

## Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **March 7, 2016.**

_____

Marvin Isgur

UNITED    STATES    BANKRUPTCY
JUDGE
